IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

VINCENT SHARNEE JOHNSON                                              PLAINTIFF

v.                              Civil No. 5:09-cv-00002

EDWARD EARL ADAMS, Acting Chief,
W.C. Dub Brassell Detention Center;
RANDY MORGAN, Jail Administrator,
Pulaski County Jail; DR. CARL
JOHNSON, Pulaski County Jail; and
JIM HAYES, Deputy, United States
Marshal Service                                                      DEFENDANTS

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff, Vincent Sharnee Johnson, filed this civil rights action on January 5, 2009. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2007), the Honorable Jimm Larry Hendren, United States District Judge, referred this case to the undersigned for the purpose of making a report and recommendation.

Separate Defendant Dr. Carl Johnson has filed a motion for summary judgment (Doc. 49). Plaintiff filed a response to the motion (Doc. 57). Dr. Johnson filed a reply brief (Doc. 60). The motion is now before me for issuance of this report and recommendation.

## I.  Background

On September 5, 2006, Plaintiff was indicted for bank robbery, brandishing a firearm during a violent crime, and being a felon in possession of a firearm. *United States v. Johnson*, 4:06-cr-00326. On May 1, 2007, a psychiatric examination was ordered. *Id.* (Doc. 34). Numerous motions and an appeal to the Court of Appeals for the Eighth Circuit followed Plaintiff's examination.

-1-

On June 16, 2008, Plaintiff alleges he fractured a bone in his right hand while playing basketball. *Complaint* (Doc. 1) at page 4 & page 6; *Amended Complaint* (Doc. 11) at page 7. At the time, he was housed in the W.C. "Dub" Brassell Adult Detention Center in Jefferson County. On June 22, 2008, Plaintiff indicates he submitted a request for medical treatment. *Complaint* at page 6; *Amended Complaint* at page 7.

On June 24th, he was transferred to the Pulaski County Regional Detention Facility. *Complaint* at page 6; *Amended Complaint* at page 7. Prior to his transfer, Plaintiff alleges he had not received any medical treatment or a response to his medical request. *Id.*

On June 24th while being booked into Pulaski County, Plaintiff asserts he informed medical staff that his hand was injured and he believed it might be broken. *Complaint* (Doc. 1) at page 6; *Amended Complaint* at page 7. He was put on the list to see the doctor. *Id.*

Dr. Johnson is a physician specializing in the practice of internal medicine. *Defendant's Exhibit* (hereinafter *Def't's Ex.*) A at ¶ 1. For the last five years, he has contracted with Pulaski County to provide medical care to inmates at the Pulaski County Regional Detention Facility. *Id.* at ¶ 2. Dr. Johnson works at the detention facility approximately twenty hours a week. *Id.* at ¶ 3. He works in conjunction with the Nurse Practitioner, Pamela Johnson, and the medical staff of the detention facility. *Id.* at ¶ 4.

On June 27th and June 29th, Plaintiff submitted sick call forms complaining of pain in his right hand. *Def't's Ex.* A at ¶ 8. He was examined by the jail nurse on June 29th. *Id.* The nurse noted that Plaintiff reported injuring his hand while playing basketball and that his hand only hurt when making a fist. *Id.* The nurse noted a deformity at the knuckle but no pain to passive manipulation. *Id.* Plaintiff's right hand was swollen. *Id.* The jail nurse referred Plaintiff to Dr. Johnson. *Id.*

On July 2nd, Plaintiff was seen by Dr. Johnson complaining of pain in his right fifth (pinkie) finger. *Complaint* (Doc. 1) at page 6; *Amended Complaint* at pages 7-8; *Defts' Ex.* A at ¶ 9. Plaintiff reported having injured his finger while playing basketball. *Deft's Ex.* A at ¶ 9. Upon examination, Dr. Johnson diagnosed a "jammed" finger. *Id.* Plaintiff was given Ibuprofen due to his complaints of pain. *Id.*

Plaintiff alleges Dr. Johnson refused to x-ray his hand and stated that he would have to wait until he was in federal custody before he received treatment. *Complaint* (Doc. 1) at page 6; *Amended Complaint* at pages 7-8 . On July 15th, Plaintiff was seen again for a prescription refill. *Complaint* (Doc. 1) at page 7; *Amended Complaint* at page 8.

On August 5th, Dr. Johnson again examined Plaintiff and ordered an x-ray of his hand. *Defts' Ex.* A at ¶ 10. The x-ray revealed a "'boxer's fracture' of the right pinkie finger." *Id.* Dr. Johnson taped Plaintiff's fourth and fifth fingers together to provide support for the pinkie. *Id.* According to Dr. Johnson, the fracture was not consistent with a basketball injury. *Id.* Instead, he indicates this type of injury occurs "when a patient punches a hard object with a closed fist." *Id.*

On August 17th, Plaintiff complained to the jail nurse that he needed treatment for pain in his right hand. *Defts' Ex.* A at ¶ 11. Plaintiff also reported that his hand was not healing correctly. *Id.* The jail nurse referred Plaintiff to Dr. Johnson. *Id.*

On August 29nd, Dr. Johnson examined Plaintiff for swelling in his right hand. *Deft's Ex.* A at ¶ 12. Dr. Johnson ordered another x-ray of Plaintiff's hand. *Id.* Dr. Johnson also advised Plaintiff that if the fracture was still evident on the x-ray an orthopedic surgeon would be consulted.. *Id.* Plaintiff was to return in one week. *Id.*

However, on September 2, 2008, Plaintiff was transferred to Dallas County Jail. *Complaint* (Doc. 1) at page 8; *Defts' Ex.* A at ¶ 13. On September 25, 2008, Johnson pled guilty to bank robbery

and brandishing a firearm during a violent crime.  *United States v. Johnson*, 4:06-cr-00326 (Doc. 62 clerk's minutes from change of plea hearing; Doc. 63 plea agreement).  The felon in possession of a firearm charge was dismissed on motion of the United States.  *Id.*

Plaintiff returned to the Pulaski County Regional Detention Facility on September 24th.  *Deft's Ex.* A at ¶ 14.  He remained incarcerated there until September 30th.  *Id.*  During this time, Dr. Johnson did not see Plaintiff.  *Id.*  The records do not indicate Plaintiff submitted a sick call slip.  *Id.*

On September 30, 2008, Johnson was transferred to the W.C. "Dub" Brassell Adult Detention Facility in Jefferson County.  *Complaint* (Doc. 1) at page 8; *Amended Complaint* (Doc. 11) at page 10.  He requested medical attention for his hand.  *Id.*  Plaintiff alleges he was examined by the doctor on October 20th and told his hand would have to be broken again and reset.  *Id.*

## II.  Applicable Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.  "They must show there is sufficient evidence to support a . . . verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).  "A case founded on

speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

### III.  Arguments of the Parties

Dr. Johnson has now moved for summary judgment.  First, he contends that Plaintiff has not, and cannot, demonstrate that he suffered from a serious medical need.  Second, Dr. Johnson contends the Plaintiff cannot establish that Dr. Johnson actually knew of, but deliberately disregarded, a serious medical need.  Dr. Johnson maintains proper medical treatment was provided to Plaintiff while he was an inmate of the Pulaski County Regional Detention Facility.

Plaintiff maintains Dr. Johnson was deliberately indifferent to his requests for medical treatment and refused him treatment in violation of the Eighth Amendment.[1]  He contends he requested treatment for a broken hand for two months before Dr. Johnson discovered his hand was fractured and needed treatment.  Plaintiff asserts Dr. Johnson refused to reset his hand or to seek assistance from a bone specialist.  Plaintiff  asserts he suffered "the torture and torment of a broken bone" in his right hand.

### IV.  Discussion

The Eighth Circuit analyzes both a pretrial detainee's and a convicted inmate's claim of inadequate medical care under the deliberate indifference standard.  *See Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006).  To prevail on an Eighth Amendment claim, Plaintiff must prove that Defendant acted with deliberate indifference to his serious medical needs.  *Estelle v. Gamble*, 429

---

[1]Plaintiff states in his response that he "is not in possession of any case documents, exhibits, legal case materials, notes or case law to properly file, research or draft the proper response [to] Defendant's Motion for Summary Judgment." *Plaintiff's Response* (Doc. 57) at page 2.  However, it is clear Plaintiff was in possession of the Summary Judgment Motion and Dr. Johnson's affidavit filed in support of the motion. *Id.* at pages 1-2.  It is also clear from Plaintiff's response that he engaged in discovery. *Id.* at pages 2-3 (referring to his first request for the production of documents). *See also Defendant's Reply Brief* (Doc. 60) (attaching a copy of Dr. Johnson's July 1, 2009, discovery responses).

U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'"  *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)(*quoting  Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir.1997)).

"For a claim of deliberate indifference, the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation.  Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Correctional Medical Services*, 512 F.3d 488*, 499 (8th Cir. 2008)(internal quotation marks and citations omitted).

The term "serious medical need" has been defined as "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.  *See e.g., Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 2008).  "The determination that a medical need is objectively serious is a factual finding." *Jones v. Minnesota Dept. of Corrections*, 512 F.3d 478, 482 (8th Cir. 2008)(citation omitted).  In this case, following the submission of two sick call forms complaining of pain in his right hand, Plaintiff was seen by the jail nurse who noted a deformity at the knuckle and that Plaintiff's hand was swollen.  Based on an x-ray, it was then determined Plaintiff  had a fracture of his right pinkie finger.  These facts are undisputed.  I therefore conclude that Plaintiff's fractured finger constituted an objectively serious medical need.  *See Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006)(fractured finger was an objectively serious medical need).

For the reasons discussed below, I find no genuine issue of material fact exists as to whether Dr. Johnson exhibited deliberate indifference to Plaintiff's serious medical needs. Plaintiff was seen by the jail nurse on June 29th and referred to Dr. Johnson. Dr. Johnson saw Plaintiff on July 2nd, August 5th, and August 29th. Dr. Johnson initially diagnosed a jammed finger based on Plaintiff's report of how the injury occurred as well as his complaints of pain. Plaintiff was prescribed Ibuprofen. When Plaintiff was still complaining of pain on August 5th, Dr. Johnson ordered an x-ray which revealed the fracture. Dr. Johnson taped Plaintiff's fourth and fifth fingers together to provide support for the pinkie. Then on August 29th, when Plaintiff still had swelling in his hand, Dr. Johnson ordered another x-ray and noted that he would speak to an orthopedic surgeon if the fracture was still evident on the x-ray. However, Plaintiff was transferred to another facility on September 2nd apparently before this could be done.

Plaintiff argues he requested treatment for his broken hand for nearly two months before he was diagnosed as having a fractured finger. However, it is undisputed that he was seen within a few days of his admission into the Pulaski County Regional Detention Facility. After the nurse saw Plaintiff, he was immediately referred to the doctor. He was then seen by the doctor three days later. Plaintiff has not presented any evidence suggesting this delay in treatment had a detrimental effect. "To avoid summary judgment an inmate alleging that a delay in treatment constitutes a constitutional deprivation must produce medical evidence to establish that the delay had a detrimental effect." *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006). Plaintiff has offered no verifiable medical evidence to establish that the delay in his receipt of medical care caused him any harm.

Furthermore, to the extent Plaintiff's claim is based on of Dr. Johnson's July 2nd failure to properly detect and diagnose a fracture rather than a jammed finger, we find the claim to be without merit.  An alleged mis-diagnosis is not sufficient to state a claim of constitutional dimension.  *See Popoalii v. Correctional Medical Services*, 512 F.3d 488, 499 (8th Cir. 2008)("Medical malpractice alone . . . is not actionable under the Eighth Amendment.").  There is nothing in the summary judgment record to suggest Dr. Johnson's medical diagnosis on July 2nd so deviated from the applicable standard of care as to evidence deliberate indifference. *See Moore v. Duffy*, 255 F.3d 543, 545 (8th Cir. 2001).

Furthermore, a mere difference of opinion over matters of expert medical judgment fails to rise to the level of a constitutional violation.  *Meuir v. Greene County Jail Employees*, 487 F.3fd 1115, 1118-19 (8th Cir. 2007).  There is no constitutional right to a particular course of treatment. *Dulany*, 132 F.3d at 1239.

## V.  Conclusion

For the reasons stated, I recommend that the motion for summary judgment (Doc. 49) be granted.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 8th day of March 2010.

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE