IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION


VINCENT SHARNEE JOHNSON                                        PLAINTIFF


      v.                      Civil No. 5:09-cv-00002


EDWARD EARL ADAMS, Acting Chief,
W.C. Dub Brassell Detention Center; and
RANDY MORGAN, Jail Administrator,
Pulaski County Jail                                            DEFENDANTS

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

    Plaintiff, Vincent Sharnee Johnson, filed this civil rights action on January 5, 2009.  Pursuant

to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2009), the Honorable Jimm Larry Hendren,

United States District Judge, referred this case to the undersigned for the purpose of making a report

and recommendation.

    Separate Defendant Randy Morgan has filed a motion for summary judgment (Doc. 102).

Plaintiff filed a response to the motion (Doc. 108).  Defendant Morgan filed a reply brief (Doc. 109).

Separate Defendant Edward E. Adams also filed a motion for summary judgment (Doc. 105). [1]

Plaintiff has not responded to this motion.  The motions are now before me for issuance of this

report and recommendation.



### 1.  Background

---

[1]On March 31, 2010, all claims against Dr. Carl Johnson and Deputy United States Marshal Jim Hayes were dismissed.  (Doc. 81 &
Doc. 84).

On September 5, 2006, Plaintiff was indicted for bank robbery, brandishing a firearm during a violent crime, and being a felon in possession of a firearm. *United States v. Johnson*, 4:06-cr-00326. On May 1, 2007, a psychiatric examination was ordered. *Id.* (Doc. 34). Numerous motions and an appeal to the Court of Appeals for the Eighth Circuit followed Plaintiff's examination.

On June 16, 2008, Plaintiff alleges he fractured a bone in his right hand while playing basketball. *Complaint* (Doc. 1) at page 4 & page 6; *Amended Complaint* (Doc. 11) at page 7. At the time, he was housed in the W.C. "Dub" Brassell Adult Detention Center in Jefferson County. Edward Adams was the acting Chief of Detention. On June 22, 2008, Plaintiff indicates he submitted a request for medical treatment. *Complaint* at page 6; *Amended Complaint* at page 7. By affidavit, Nurse Randle asserts there are no copies of any requests made in June of 2008 by Plaintiff for treatment for an injured hand. *Adam's Ex.* B.

On June 24th, prior to his receipt of medical treatment, Plaintiff was transferred to the Pulaski County Regional Detention Facility (PCRDF). *Complaint* at page 6; *Amended Complaint* at page 7. Randy Morgan is the Chief of Detention at the PCRDF. *Morgan's Ex.* A at ¶ 2.

Pulaski County contracts with a licensed physician to serve as Medical Director at the PCRDF and to provide medical services to detainees. *Morgan's Ex.* A at ¶ 4. At the times relevant to this case, Dr. Carl Johnson served in this capacity. *Id.* at ¶¶ 4-5. Pursuant to the PCRDF's healthcare policy, qualified healthcare personnel have sole responsibility for decisions regarding health care services provided to detainees. *Id.* at ¶¶ 11 & 15.

Sick call forms are "readily available" to inmates to request treatment. *Morgan's Ex.* A at ¶ 12. Detainees who wish to request healthcare services complete a sick call form and deposit it in designated collection boxes located in each housing unit. *Id.*

Nursing personnel collect the sick call forms on a daily basis. *Morgan's Ex.* A at ¶ 13. The forms are reviewed by medical personnel and the detainees referred to the appropriate healthcare provider. *Id.* at ¶ 14. Only qualified medical personnel are permitted to evaluate and care for detainees. *Id.* at ¶ 16.

On June 24th, while being booked into the PCRDF, Plaintiff asserts he informed medical staff that his hand was injured and he believed it might be broken. *Complaint* (Doc. 1) at page 6; *Amended Complaint* at page 7. He was put on the list to see the doctor. *Id.*

On June 29th, Plaintiff submitted a sick call form complaining of pain in his right hand. *Dr. Johnson's Ex.* A (Doc. 49-2) at ¶ 8. He was examined by the jail nurse on June 29th. *Id.* The nurse noted that Plaintiff reported injuring his hand while playing basketball and that his hand only hurt when making a fist. *Id.* The nurse noted a deformity at the knuckle but no pain on passive manipulation. *Id.* Plaintiff's right hand was swollen. *Id.* The jail nurse referred Plaintiff to Dr. Johnson. *Id.*

On July 2nd, Plaintiff was seen by Dr. Johnson in the PCRDF medical clinic complaining of pain in his right fifth (pinkie) finger. *Complaint* (Doc. 1) at page 6; *Amended Complaint* at pages 7-8; *Morgan's Ex.* A at ¶ 5. Plaintiff reported having injured his finger while playing basketball. *Dr. Johnson's Ex.* A (Doc. 49-2) at ¶ 9. Upon examination, Dr. Johnson diagnosed a "jammed" finger. *Id.* Plaintiff was given Ibuprofen due to his complaints of pain. *Id.*

That same day, Plaintiff filed a grievance asserting that Dr. Johnson had denied him medical treatment for his right hand. *Morgan's Ex.* A-1 at pg. 1. According to the grievance, Dr. Johnson advised Plaintiff that he would have to wait until he was in federal custody before he could receive treatment for his hand injury. *Id.* Plaintiff also asserts that Dr. Johnson refused to x-ray his hand. *Id.*

The grievance officer responded that he had been advised by Nurse Speer, the Health Services Administrator, that Plaintiff had not seen the doctor in the clinic and instead was seen by the sick call nurse on July 1st.  *Morgan's Ex.* A-1 at pg. 2.  Plaintiff was told that he had been referred to the clinic for the next available appointment.  *Id.*  The Plaintiff appealed stating that he needed "medical treatment to cause a cure to the pain in my right hand."  *Id.*  Plaintiff did not address the issue of the date on which he was seen by Dr. Johnson.  *Id.*

On July 14th, Chief Morgan reviewed the grievance and disposition and concurred with the grievance officer.  *Id.*; *Morgan's Ex.* A at ¶ 6.  Chief Morgan asserts that the grievance appeal was the only connection, or interaction, he had with the Plaintiff prior to the filing of this lawsuit.  *Id.* at ¶ 17.  Chief Morgan believed that the PCRDF nurses and Dr. Johnson were working to address Plaintiff's requests for treatment and were not ignoring his medical needs.  *Id.*  Chief Morgan asserts he made no decisions about the medication or treatment Plaintiff received while he was held at the PCRDF.  *Id.* at ¶ 18.

On July 15th, Plaintiff was seen again for a prescription refill.  *Complaint* (Doc. 1) at page 7; *Amended Complaint* at page 8.  On August 5th, Dr. Johnson again examined Plaintiff and ordered an x-ray of his hand.  *Dr. Johnson's Ex.* A (Doc. 49-2) at ¶ 10.  The x-ray revealed a "'boxer's fracture' of the right pinkie finger."  *Id.*  Dr. Johnson taped Plaintiff's fourth and fifth fingers together to provide support for the pinkie.  *Id.*  According to Dr. Johnson, the fracture was not consistent with a basketball injury.  *Id.*  Instead, he indicates this type of injury occurs "when a patient punches a hard object with a closed fist."  *Id.*

On August 17th, Plaintiff completed a sick call form.  *Morgan's Ex.* A-2.  He indicated Dr. Johnson had discovered a broken bone in his hand and he needed treatment for the pain and discomfort.  *Id.*  Plaintiff also reported that his hand was not healing correctly.  *Id.*  On August 27th,

Nurse Washburn noted that Plaintiff's right hand remained swollen and he was unable to make a fist. *Id.* She referred Plaintiff to Dr. Johnson. *Id.*

On August 29nd, Dr. Johnson examined Plaintiff for swelling in his right hand. *Dr. Johnson's Ex.* A (Doc. 49-2) at ¶ 12. Dr. Johnson ordered another x-ray of Plaintiff's hand. *Id.* Dr. Johnson also advised Plaintiff that if the fracture was still evident on the x-ray an orthopedic surgeon would be consulted. *Id.* Plaintiff was to return in one week. *Id.*

On September 2, 2008, Plaintiff was transferred to Dallas County Jail. *Complaint* (Doc. 1) at page 8; *Morgan's Ex.* A at ¶ 8. On September 25, 2008, Johnson pled guilty to bank robbery and brandishing a firearm during a violent crime. *United States v. Johnson*, 4:06-cr-00326 (Doc. 62 clerk's minutes from change of plea hearing; Doc. 63 plea agreement). The felon in possession of a firearm charge was dismissed on motion of the United States. *Id.*

Plaintiff returned to the PCRDF on September 24th. *Morgan's Ex.* A at ¶ 8. He remained incarcerated there until September 30th. *Id.* During this time, the records do not indicate Plaintiff submitted a sick call slip. *Id.* Plaintiff has not been housed at the PCRDF since September 30, 2008.

On September 30, 2008, Johnson was transferred to the W.C. "Dub" Brassell Adult Detention Facility in Jefferson County. *Complaint* (Doc. 1) at page 8; *Amended Complaint* (Doc. 11) at page 10. On October 6th, he requested medical attention for his hand. *Id.* In response to his request form, on October 10th, Plaintiff met with Chief Mike Hurst. *Id.* On October 15th, Plaintiff submitted a written request for medical care. *Adam's Ex.* A. Chief Hurst responded in writing telling Plaintiff to be more patient and that "[a]ll this is in the works!" *Id.* Plaintiff alleges he was examined by a doctor and Nurse Angela Randle[2] on October 20th and told his hand would have to be broken again and

---

[2]In his complaint, Plaintiff erroneously refers to this nurse as Nurse Reynolds.

reset.  *Id.*  Plaintiff does not state whether he accepted the treatment that was offered.  *Complaint* (Doc. 1) at pg. 8; *Amended Complaint* (Doc. 11) at pg. 10.

### 2.  Applicable Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists."  <u>National Bank of Commerce v. Dow Chemical Co.</u>, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  <u>Matsushita</u>, 475 U.S. at 586.  "They must show there is sufficient evidence to support a . . . verdict in their favor."  <u>National Bank</u>, 165 F.3d at 607 (<u>citing Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986)).  "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment."  *Id.* (<u>citing Metge v. Baehler</u>, 762 F.2d 621, 625 (8th Cir. 1985)).

### 3.  Arguments of the Parties

Chief Morgan has now moved for summary judgment.  First, he maintains the undisputed facts show he had no personal involvement in Plaintiff's medical care and therefore no knowledge of his allegedly serious medical needs.  As a matter of law, Chief Morgan asserts that Plaintiff's claim fails.  Second, Chief Morgan argues there is no verifiable medical evidence that any delay in treatment of

the Plaintiff's hand injury caused any detrimental effect to Plaintiff's medical condition.  Without such evidence, Chief Morgan argues the denial of medical care claim fails.

Plaintiff first maintains Chief Morgan violated the terms of the contract between Pulaski County and the United States Marshal Service (USMS) when he allowed Plaintiff to be transferred to other area jails without sending the Plaintiff's medical records.  Plaintiff asserts this violation resulted in him being denied adequate medical treatment at other area jails and caused him unnecessary pain and suffering.  In support, he points out he was transferred from PCRDF to the Dallas County Jail in Fordyce, Arkansas on September 2nd. According to Plaintiff, when he was seen by the nurse on September 4th, she indicated they would need to obtain his medical records before any treatment was authorized.  Additionally, on September 30th, Plaintiff indicates he was transferred back to the W.C. "Dub" Brassell Detention Center without any medical treatment charts or medical records.  Plaintiff argues that the failure to follow the USMS policy is sufficient to support liability under §1983.

Second, Plaintiff argues that Chief Morgan failed to appropriately address the issues raised in his July 2nd grievance.  Plaintiff points out that he said in the grievance he had been seen by Dr. Johnson and that he refused to treat Plaintiff telling him he would have to wait until he was in federal prison to get treatment.  In response, he was told there were no medical records of a doctor's visit that day.  Plaintiff maintains Chief Morgan did not address the statement or issues raised in the grievance. Plaintiff argues that Chief Morgan's actions in turning a blind eye to the grievance appeal allowed Dr. Johnson to deny him medical treatment.

Defendant Adams first argues that there is no basis for liability against him in his official capacity.  He argues the record is completely devoid of any alleged custom or policy of Jefferson County which resulted in a violation of Plaintiff's constitutional rights.

-7-

Next, Defendant Adams argues there is no evidence that Plaintiff ever requested medical care for a injured hand prior to his transfer to the PCRDF.  However, if it is assumed Plaintiff did request medical care on June 22nd, as he maintains, Chief Morgan argues there was insufficient time to arrange a doctor visit prior to Plaintiff's transfer to the PCRDF on June 24th.  When Plaintiff was transferred back to the facility on September 30th, Defendant Adams notes the hand had healed and Plaintiff was told on October 20th, when he was seen by a doctor, that his hand would have to be re-broken.

As noted above, Plaintiff did not respond to Defendant Adam's summary judgment motion.

**4.  Discussion**

The Eighth Circuit analyzes both a pretrial detainee's and a convicted inmate's claim of inadequate medical care under the deliberate indifference standard.  See Butler v. Fletcher, 465 F.3d 340, 344 (8th Cir. 2006).  To prevail on an Eighth Amendment claim, Plaintiff must prove that Defendant acted with deliberate indifference to his serious medical needs.  Estelle v. Gamble, 429 U.S. 97, 106 (1976).  The deliberate indifference standard includes "both an objective and a subjective component:  'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'"  Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000)(quoting Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir.1997)).

In this case both Chief Morgan and Defendant Adams occupy supervisory positions at the respective detention facilities.  A supervisor is only liable "for an Eighth Amendment violation when the supervisor is personally involved in the violation or when the supervisor's corrective inaction constitutes deliberate indifference toward the violation."  Boyd v. Knox, 47 F.3d 966, 968 (8th Cir.

1995). "The supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye [to it]." *Id.* Generally, a supervisory official, as a non-medical professional, is not personally liable for his medical staff's treatment decisions. See Meloy v. Bachmeier, 302 F.3d 845, 849 (8th Cir. 2002).

Plaintiff's claim against Chief Morgan is based on (1) his response to Plaintiff's grievance appeal; and (2) his alleged violation of the terms of a contract between Pulaski County and the USMS that require medical records to be sent with a detainee upon transfer to another facility.

Clearly these actions are insufficient to constitute deliberate indifference. With respect to the grievance, Plaintiff denied he had received adequate medical treatment, the grievance officer's response indicated Plaintiff was scheduled for the next available appointment with the doctor. Thus, indicating Plaintiff would be receiving medical treatment. When he submitted the appeal, Plaintiff only stated he needed medical treatment for his right hand. Plaintiff did not explain that Nurse Speer's review of the medical records was incorrect and Plaintiff had in fact seen the doctor and been denied treatment by him.

With respect to the alleged contractual violation, the obligation to provide adequate medical care arises from the custodial nature of the relationship and derives from the Eighth and Fourteenth Amendments. Pietrafeso v. Lawrence County, S.D., 452 F.3d 978, 982 (8th Cir. 2006). Failing to transfer the medical records does not, in the circumstances of this case, constitute deliberate indifference. Plaintiff advised medical personnel at the W.B. Brassell Detention Center of the existence of the records and that an x-ray had shown a fracture of his hand. Thus, medical personnel at the facility were aware of the fracture and nothing in the summary judgment record indicates there would have been any difficulty in obtaining the records. Further, Plaintiff has not shown how the

-9-

failure to forward the medical records at the time of transfer harmed him.  "To avoid summary judgment an inmate alleging that a delay in treatment constitutes a constitutional deprivation must produce medical evidence to establish that the delay had a detrimental effect."  Gibson v. Weber, 433 F.3d 642, 646 (8th Cir. 2006).  Plaintiff has offered no verifiable medical evidence to establish that the delay in his receipt of medical care caused him any harm.

With respect to Defendant Adams, there is no suggestion in the record that he had any personal involvement in the decision of what medical care should be provided Plaintiff.  In fact, there is no suggestion that Defendant Adams and Plaintiff has any interaction at all.

The official capacity claims against Chief Morgan and Defendant Adams are the equivalent of  claims directly against Pulaski County and Jefferson County respectively.  See e.g., Bankhead v. Knickrehm, 360 F.3d 839, 844 (2004).  The Supreme Court has held that a governmental entity can be held liability under § 1983 if an "action pursuant to official [government] policy [or a widespread custom or practice] of some nature caused a constitutional tort."  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978); see also Marksmeier v. Davie, 622 F.3d 896, 902 (8th Cir. 2010).  To establish the liability of either County Plaintiff must first show that he was denied adequate medical care.  Plaintiff has not made this showing.  Second, Plaintiff "must establish the requisite degree of fault on the part of the [governmental entity] and a causal link between [the] policy [practice or custom] and the violation.  Such a showing requires either the existence of a . . . policy that violates federal law on its face or evidence that the [governmental entity] has acted with deliberate indifference to an individual's federal rights."  Veatch v. Bartels Lutheran Home, 627 F.3d 1254, 1257 (8th Cir. 2010)(internal quotation marks and citations omitted).  Clearly, Plaintiff

has made no showing of a policy, practice, or custom, that was the moving force behind the alleged constitutional violation.

### 5.  Conclusion

For the reasons stated, I recommend that the motions for summary judgment (Doc. 102 & Doc. 105) be granted.  This case should be dismissed with prejudice.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 5th day of April 2011.


/s/ Barry A. Bryant
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE